## Louisville Gas & Electric Company v. Wulf.

(Decided October 19, 1915.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch No. 4).

Libel and Slander—Innuendo Unjustified by Facts Disclosed by Inducement and Colloquium.—Where the language of an alleged libelous publication is harmless and innocent on its face but is by reference to extrinsic facts sought to be impressed with a covert meaning wholly at variance from its ordinary interpretation, the real inquiry is whether in the light of all the circumstances the communication was reasonably calculated to produce upon the minds of its recipients, assuming them to be persons of average intelligence and free from bias, the impression that a defamatory charge was being asserted.

O'DOHERTY & YONTS for appellant.

ELMER C. UNDERWOOD, ROBT. G. WULF and O'NEAL & O'NEAL for appellee.

OPINION OF THE COURT BY JUDGE HANNAH.—Reversing.

During a period of twenty-eight years prior to May, 1913, John H. Wulf was engaged in the retail drug business, first as salesman and later as proprietor, at Preston and St. Catherine Streets in Louisville. In May, 1913, he completed the construction of a modern business building at the corner of Barrett Avenue and Kentucky Street in Louisville, a point said to be about two miles distant from his former location, and he thereupon removed to, and embarked in, the retail drug business at this latter location, his total investment, including an equipment of handsome fixtures and a large stock of merchandise, being about twenty thousand dollars.

In June, 1913, he entered into an arrangement with the Louisville Gas & Electric Company whereby patrons

of that company were authorized to pay their bills for gas and electricity at Wulf's drug store, by paying to him, in addition to the face of the bill, a fee of two cents which was his compensation for making the collection.

Under this arrangement, bills were made out by the company and mailed to its patrons in the district wherein Wulf was authorized to receive payment thereof, in the latter part of each month. These bills advised the customers that Wulf was the agent of the company authorized to receive payment thereof. They were presented and paid to Wulf, receipted by him, and returned to the customer. About nine days after mailing out the bills— at the expiration of the discount period—the company would send its collector to Wulf's place of business to receive the amounts so collected by him.

For a number of years prior to his removal from Preston and St. Catherine Streets, Wulf had collected for the Gas & Electric Company and companies afterwards merged into it, under an arrangement of the same nature.

Wulf collected and paid over to the company the amounts due to it from its patrons in his district for the month of June, 1913, and thereafter up to and including the month of December, 1913. In the latter month bills were sent out by the company to its patrons in his district, the discount period expiring December 31, 1913. These bills were paid to him, and on January 2, 1914, the amounts so collected were by him paid over to the company's collector, who receipted therefor in itemized form on a book or record furnished to Wulf by the company for that purpose, the book being kept by Wulf at his store.

On January 9, 1914, the company, through a misunderstanding or mistake upon the part of the clerical force in charge of delinquent collections, sent to a number of its partons who had paid their bills for December, to Wulf, a letter which read as follows:

"According to our records, the above bill still remains unpaid. I presume that our failure to receive your remittance is simply due to an oversight and not from any disposition on your part to neglect this payment. Will you kindly let us have your check by return mail, and oblige?"

To other patrons, who had previously paid their bills to Wulf, there was sent a letter which read as follows:

"According to our records, the above bill still remains unpaid. Failure to receive your remittance for the same within three days from date of this letter will be considered as a notice that the service is no longer desired, and we shall have same discontinued at that time. For your information, we wish to say that if the service is discontinued for non-payment, a charge of $1.00 will be collected before re-connection is made."

And, later, the following letter was sent by the company to some of its patrons who had paid their bills to Wulf:

"We have not received a reply to the letter mailed to you a few days ago in reference to the above account. As this account is considerably past due, we would appreciate it if you would call at this office and make settlement for same."

Asserting that the letters mentioned charged him with the offense of embezzling the money so paid to him by the company's patrons who received such letters, and were so understood by such patrons, Wulf brought this action against the Louisville Gas & Electric Company, in the Jefferson Circuit Court, to recover damages for the alleged libel. He recovered a verdict and judgment in the sum of five thousand dollars, and the defendant appeals.

The language of the letters is apparently innocent on its face; but it is contended by appellee that under the facts disclosed by the inducement and colloquium, the letters are fairly susceptible of the defamatory meaning with which they are sought to be impressed by the innuendo. This is a question of law.

"If the words are not reasonably susceptible of any defamatory meaning, the judge at the trial will direct a non-suit.   *   *   *   Where the words of an alleged libelous publication are not reasonably susceptible of any defamatory meaning, the court is justified in sustaining a demurrer to the declaration.   *   *   *   Or, in other words, it is for the court to decide whether a publication is capable of the meaning ascribed to it by an innuendo, and for the jury to determine whether such meaning is truly ascribed." Newell on Slander and Libel, 3rd. Ed., Sections 344 and 345.

"It is the duty of the court to say whether a publication is capable of the meaning ascribed to it by the innuendo. But when the court is satisfied of that, it must

be left to the jury to say whether the publication has the meaning so ascribed to it.'' 25 Cyc., 545.

In determining this question, in a case like this, where the language used is entirely innocent and harmless on its face, but is such that it might possibly, in connection with certain extrinsic facts, convey a covert meaning wholly at variance from its ordinary interpretation, the inquiry is not whether the language was understood in its covert sense by those who received the letters, for that would be to substitute the irresponsible, hasty opinions of perhaps prejudiced minds for the calm and careful judgment of the court, and to place the defendant at the mercy of the misconception or morbid imaginations of the witnesses, permitting them to usurp the functions of court and jury.

The real inqury is rather whether, under all the circumstances, the language of the letters mentioned was fairly and reasonably calculated to produce upon the minds of the recipients thereof, assuming them to be persons of average intelligence and free from bias for or against the plaintiff, the impression that the company was charging plaintiff with the offense of embezzlement or wrongdoing in connection with the money collected by him from its patrons. Thompson v. Lewiston Daily Pub. Co., 91 Me., 203, 39 Atl., 556.

If there be a publication of matter which though apparently innocent and harmless on its face, is sought to be shown to be defamatory by reference to extrinsic facts, and such publication is made without the existence of any seeming occasion therefor, this is a factor of considerable weight in determining whether the language was reasonably calculated to convey to the recipients of the communication the defamatory meaning sought to be impressed thereupon. The recipient of such a communication, being unable to account for its publication in any other reasonable manner, might be justified in assuming that the communication is an attempt to libel by indirection.

But, in the instant case, there is shown by uncontradicted evidence, indeed by the conceded facts, a reasonable explanation of and occasion for the writing and sending of the letters mentioned.

A short time before this, there had been effected a merger of several heating and light companies in Louis- ville, and in the press of business occasioned by the work

of bringing the whole into one system, and on account of a change in the accounting methods, a clerk who had been transferred to the credit department to assist in sending out the notices to delinquent patrons, acting under the impression that the cashier had noted on the list of delinquents all those who had paid their bills after the closure of the books on a former day, sent out the letters here involved, the names of such persons not having been so checked off of the list.

The sums were small; and each bill had printed upon it a notice to the effect that Wulf was the agent of the company authorized to receive payment thereof; and each bill so paid had been receipted by Wulf and returned to and was then in the possession of the patrons mentioned.

Wulf was living in the immediate vicinity, was the owner of considerable property, permanently located, and doing a properous business; and it is unreasonable to presume that any person of average intelligence would conclude from the letters in question that Wulf had embezzled the money. It seems to us that any person of average intelligence would know that the receipted bills in the possession of the company's customers would completely exonerate them from having to pay the items a second time, and that there could be no inducement on the part of the company to lay before its customers a charge that Wulf had retained this money, or to attempt to collect bills which had already been paid to its authorized agent.

Under these circumstances, the only impression that these letters were fairly and reasonably calculated to produce upon the minds of a person of average intelligence and free from bias, was that an error had been made somewhere in the records of the company which would be corrected upon the presentation of the receipted bill.

We are therefore of the opinion that the innuendo asserted by the plaintiff is not justified, and the trial court should have directed a verdict for the defendant.

The judgment is reversed; the whole court sitting. Judge Nunn dissenting.